May I please the court? My name is Danny Miller. I represent the plaintiff and appellant in conjunction with the case wherein she was after having the threat of her to be tied up and raped having it occur. There was a report of the threat to do precisely what it is that occurred and the threat was who took that information and did nothing with it. Now the crux of why we're here to talk to you today is with regard to the operation of certain immunities as they relate to doing nothing with that information. At issue as well is the operation of RSMO 210.115 which is a mandatory reporting statute. That mandatory reporting statute does not create a civil cause of action. However, it has been held both by this court and by the Western District Court of Appeals in the cases of Bradley v. Ray, Pope v. Ray, and Pope v. Pope, all the same case. The same case came up here three times and it went to the Western District three times to basically establish and refine the law in Missouri and deal with the issue of an defendant, Dr. Ray, and a defendant known as Bruce Strenod who was deceased and represented by a defendant at Lydom. So let's talk about the immunities and the previous cases in terms of whether or not in the set of circumstances that we find ourselves in, whether or not it is reasonable and in for plaintiff to be denied her day in court based upon those. What claim are you referring to? Judge, obviously there's the constitutional claim but primarily the common law tort claim. All right, so you're arguing the state law claim. State law claim, failure to protect. On the constitutional claim, you're just submitting that on the briefs for now then? Judge, yes. Okay. All right. I mean, if you've got any questions, I can talk about it but I, quite frankly, I feel that the error is the most egregious with regard to the state. Okay. The error the district court made with regard to the state law claims is the most egregious. I've got one factual question. Yes, ma'am. And that is the act that is the focus here occurred in a swimming pool. Was that an outing that was sponsored by this program? I can't answer that question, Judge. I wish I knew the answer and I can tell you obviously that would have been, I wish I could stand here and tell you the answer to the question was yes, but I can't. They were just out there on their own, independent of the program. Judge, quite frankly, that's not a fact that we have that . . . Well, it could make a difference on the constitutional issue. Sure. Sure. I think it can make a difference on the constitutional issue because then it's more state action. The only problem with the, and I'm pretty candid with every court I'm in front of, and I think you're supposed to be, but I've just kind of got it in my nature to have a little extra helping of that, but the issue I think which may create a problem with regard to the constitutional issue is that the program that they were in was not mandatory. If it had been mandated by the school district, then I think that I would be in an even stronger position with regard to that, but be that as it may, I'm not abandoning that claim. It's just the fact that I recognize that's a weakness or an issue in my mind. How do you get around the discretionary problem with the immunity, official immunity, since the duty depends on reasonable cause? I think Judge Sippel thought, well, that involves some discretion in determining whether there's enough cause, right? Absolutely, Judge, and unlike some people, the idea of thanking you for asking the question is very sincere on my part because that was the first point on my cheat sheet that I was getting ready to go to. All right. Let's hear it. Judge, it boils down to this. You can call and act. Any act that we as humans do other than breathing in our heartbeat has an element of discretion in it. So if you go, gee, it was a discretionary act to blow off your duty, then you know what? You're right. It is. The marshal could go, you know, I think it looks good on the western front. I'm going to go over here and watch out the windows and see how the cardinals are doing today. He could blow off his job, not intimating that he would, but if he did, Judge, it wouldn't make that any more discretionary than these guys blowing off their job. And here's what I think, and this is what I would really like to see that this court do. I think you read the language of the other opinions, and I think what we need is this. I think we need the distinction between, in essence, gross negligence and ordinary negligence. There is a line, because the cases clearly say, Judge, that these are all fact specific. So, you know, whenever you have discretionary versus ministerial and fact specific, those are two things that you have to be real careful drawing bright lines on, because those two concepts are themselves, to a degree, mutually exclusive. So what I think we have to do is have a line, and I wish our courts in Missouri had done a little better job of interpreting our law, but I'm asking this court to do what it is that I think that the cases would indicate should happen, which is pronounce the line There is a line at which it's ministerial, namely that, you know, you present those facts and go, and in this case, the statute, and go, guess what, anybody ought to know that. And I think it's whether or not, and I think what helps us is, do you need to be an expert in your field to be able to make that determination? If a person of common and ordinary experience presented with those facts could make the decision, that's ministerial. If it requires professional expertise in order to make that judgment, and whenever you discuss, or whenever it has been discussed, the ministerial versus discretionary distinction, then we go to the nature of the duties, and in this case, the nature of duties are to either report or warn parents how much policymaking or professional expertise, we're back into it there, the judgment the act involves. And I don't know that a person could say, in this circumstance, that being told that a kid has threatened to tie somebody up and rape them, I'm just not thinking that you've got to be Dr. Phil in order to interpret what it is that's being said and know what to do with it. So you're saying that you want an interpretation that sometimes the statute is ministerial, and sometimes it's discretionary, but it depends on the facts? Judge, I think that the cases basically say that it is a case-by-case basis, and any time you have to go through nature of the duty, policymaking, and the consequences of withholding immunity, those are factual determinations. Those are factual determinations and balancing. But as to this particular statute that has the language of the person has reasonable cause to suspect? And I think, Judge, the bugaboo in the language in that one is the term reasonable cause to suspect. And there's where, in my mind, that's where our problem resides, is the idea that we do not have a clear statement on the reasonable cause to suspect. And if it is a reasonable cause to suspect would be that which an ordinary layman would view as a reasonable cause to suspect, then it's ministerial. If it requires professional judgment and expertise, then it's discretionary. And that's what . . . This is sort of Floyd Gibson's view in the Larson case that you're stating, isn't it? Correct, Judge. Correct. But I do think Missouri law . . . of course, that case came out the other way under Nebraska law. So you're kind of fighting against a non-bonk opinion there. Well, I'm fighting against a non-bonk opinion with regard to Nebraska law. But I'm not . . . So you're saying in Missouri law, the same decision, we should construe Missouri law differently than Nebraska, and that if, as a matter of law, there was reasonable cause, then the act is ministerial. Right. Okay. Yeah. And, Judge, as I said, because I think that the idea that just because you throw a phrase of reasonable cause with it, without a standard of what that phrase means, then it's obviously, well, didn't have reasonable cause. Whenever the facts of it, and in particular, these are some fairly egregious facts for that, if that doesn't . . . if somebody telling you that they're going to do it in a fairly specific way, who has had a history of prior assaults and contacts of a sexual nature, isn't enough to give you reasonable suspicion, I'm a little short on what it is that that person's looking for. But with that, Judge, I'm going to shut up, so that way I've got about $1.40 to work with on the back end. Mr. Schultz. Thank you. May it please the Court. Good morning, Your Honors. My name is Philip Schultz, and I'm here for defendants Mike Waddell, Stephanie Howerton, and Jeff Hall. As Mr. Miller just described, the facts underlying this case are tragic. But as the Supreme Court held in De Cheney v. Winnebago County, not every strategy involving state actors is a . . . contains a constitutional violation. In the summer of 2003, plaintiff was sexually assaulted by a minor identified as S.H. The facts and records show that at that time, she was at a public swimming pool, and she was not in the custody or control of any of the defendants. It wasn't an outing that the defendants planned? Correct, Your Honor. It happened during the summer, and the program that they were both participants in was a during-school program. Further . . . Also, the facts and records show that three to six months prior to the assault happening, S.H. made a threat to the plaintiff that he was going to sexually assault her. A third party became aware of that threat being made, and within 24 hours of getting that knowledge, that third party made a call to the child abuse hotline maintained by the Missouri Department of Social Services. In this case, plaintiff has three claims, one under Section 1983, Missouri state law claims for negligence and negligent infliction of emotional distress. Defendants Hall, Howerton, and Waddell all moved for summary judgment and for judgment on the pleadings based on official immunity, qualified immunity, and the public duty doctrine. Under qualified immunity, a state actor cannot be held liable unless the plaintiff makes a showing that there was a violation of a clearly established constitutional right. In Descheny versus Winnebago County, the Supreme Court determined that a state actor does not have a generalized duty to prevent private violence. Some exceptions creating a duty to that have been where the state has control over the individual or where the state actor took some action that caused or increased the risk of harm to the plaintiff. In this case, none of those factors are present. Plaintiff or SH were not in the custody of any of the defendants. And there's no evidence or allegations in the record of how any of the defendants would have increased the risk that was faced by the plaintiff. Mr. Miller's argued that the actions of the defendants in failing to make a call to the child abuse hotline increased the risk of danger to the plaintiff. But the evidence in the record shows that within 24 hours of this threat being made, a call was made to the child abuse hotline. There's no evidence that additional calls would have changed anything. So, in essence, it's sort of a moot point that even if these individuals had made this phone call to the hotline, that call was made and the action still occurred as they did. What happened? Let's see. The non-defendant here called the hotline. And who's at the hotline? The Department of Social Services. They're not a defendant. Are they a defendant here? Ms. Howerton is a supervisor in that office, but she was not the person that the call came into. It came into someone else in the office. They went and investigated that call. It's disputed as to who went and investigated it, but what is not disputed is Ms. Howerton, Mr. Watto, and Mr. Hall were not investigating the claim. They went out and, I guess, met with the third party, met with the boy. And from that, it was recommended that the boy get counseling, but the record doesn't show that that had happened, and I don't believe that it did. There wasn't any follow-up? I don't believe, after that interview, there wasn't a follow-up ensuring that the boy got any therapy. So what do you mean, even if the call had been made, it wouldn't have made any difference? If Howerton's a defendant, they're not alleging that she should have called the hotline because she runs the place. Well, I believe Mr. Miller, that is his allegation, is that they showed that these defendants had some sort of duty under 210-155 to report. And my argument would be that that report was made, and any additional reports would not have resulted in any more different actions. Well, was that a rationale at the district court? I thought the district court resolved it on immunity. Yes, yes. So is this an alternative basis? Yes, Your Honor. Was there anything unusual about the boy's threat that was so specific? And it ended up being exactly how this detail was specified. Sure. I would argue how specific it was. He didn't give a specific time frame of when he was going to do it or that this was going to happen at the pool in two weeks. He made a general threat about how he was going to conduct it. That did come out to be how he was going to conduct it, but that didn't happen for three to six months down the road at a location not related to the area where the threat was made. Maybe I'm misremembering, but I thought part of the allegation was that the defendants should have notified the family of the victim. Not just that they should have called the hotline again. Right. I believe that is one of the arguments Mr. Miller is making under state law claims as well. And I would say to that, certainly for his 1983 claim, there's not a constitutional duty on these parties to notify the parents. And I would say even under Missouri law, the basis that Mr. Miller has cited here is the Bradley B. Ray case, which deals with psychologists getting knowledge of a specific threat to a specific person. There's not a duty under Missouri law placed on just general state actors. And even if you were to say that there was some duty to warn the parents, the duty created in Bradley B. Ray is in regards to a private party actor, not a state actor. So in that case, official immunity, which applies to discretionary acts, would still bar that claim. And as this court talked about, because it would be discretionary whether to notify the parents? Yes, Your Honor. What would be the discretion that's exercised? I guess whether this fact warrants some sort of specific enough of a threat that the parents should be involved or how to go about even warning the parents. What does the record show about any teacher or employee there knowing about the nature of the threats? Because they were quite specific kind of threats. As to my defendants or just anyone at the school? Well, that's the broadest way to answer it, yeah. I don't believe that there's any evidence in the record about my defendants having knowledge. He's alleged it, but in taking their depositions, no one had a specific memory of telling any of the defendants that I represent prior to the assault occurring that there was this threat out there. Well, what do you say to Mr. Miller's argument that under Missouri law, if the reasonable cause is obvious and that no reasonable person could conclude there was not a reasonable cause, then the duty is ministerial? I would say that. I think that's his argument. I would say that Missouri law is very clear that ministerial duties are a type of duty that's specifically described by statute of saying a county clerk stamps something that's being filed when somebody hands it to them. That distinction isn't what exists under Missouri law. And this statute clearly asks for more than just a ministerial duty under Missouri law where it is so bright line of just being things that are specifically described by statute. There's nothing in the 210-155 saying if you have a specific threat about a specific time, then you must report. It's left up to the discretion of that actor. So I would say that it truly is a statute imbuing the state actor with discretion. For the clerk, is this the 10 minutes or is that? You've got one point. Okay, this is my 10. I'm sorry. I think if we had a question, we would pop it right now. In conclusion, I don't believe that there's any violation of any duty by any of these actors owed to the plaintiff in the district court's grant of summary judgment and judgment on the pleadings was correct, and I ask you to affirm that.  Thank you. Thank you, Your Honor. For our other members, we have Officer Holtmeyer. I guess I want to address the official immunity discussion that we're having. One point I want to bring up is the legislature very easily could have said, if there is any cause to suspect, you have a duty to report. Instead, it decided to use reasonable cause. In my mind, the legislature was making this a discretionary statute by using that language. The legislature is well-versed in statutory construction and drafting, and it put that terminology in on purpose. And frankly, it's not unlike what a police officer would do, which is undisputedly discretionary in this court, which is making determinations about probable cause, making determinations about reasonable suspicion. These are things that my client, a police officer, does, and that's the language that the statute uses. And Mr. Miller said, well, it doesn't have a specific definition, and the reason is it is discretionary, and that was the purpose of the statute. The legislature made this discretionary on purpose. It could have used a very specific language. If there is any allegation that could be construed to be a threat, you must report. It doesn't say that. It says reasonable cause. It mirrors investigatory language involving police officers. In my mind, it is a discretionary statute. And Mr. Miller, I think, is making a claim based on the Bradley B. Ray case that the parent of KB should have been notified. And again, that is a discretionary point that official immunity in Missouri prevents my client, Officer Holzmeier, from being sued under negligence on. In Bradley B. Ray, Dr. Srinath and Dr. Ray were not state actors. They were private psychologists. So they would not be protected by official immunity. There is no official immunity case in Missouri that has adopted, so this court would be adopting something new that changes the discretionary versus ministerial dichotomy. It's based on the language of the statute. It is not based on the facts of the case. My recollection is there is a license issue case that Mr. Schultz discussed. It's something that is in the statute. If we were to do what Mr. Miller suggests, essentially we'd be able to litigate, or Mr. Miller would or the plaintiffs attorneys would be able to litigate, the facts of the underlying case. Is this a gross negligence case? Is this a reckless case? And if that's the case, then it's discretionary versus ministerial. So essentially you get to litigate the facts the first time to determine what the extent of the duty is, and that is not how any Missouri case analyzes discretionary versus ministerial function. They are all based on the language of the statute, and there has not been a single departure that I'm aware of from that. In this case, reasonable cause clearly invites the person to make discretionary determinations about the nature of the threat of child abuse, and that is where the inquiry stops. It doesn't go into the actual facts of the case. The other issue I wanted to bring up that I don't think we got into is public duty doctrine. The let flow case decided by the Missouri Court of Appeals Western District actually specifically says that the duty that a state actor owes is to the general public as a whole. That's already been decided by the case. Therefore, the public duty doctrine would prevent any common law negligence claims against my client or the other actors in this case. They have already held it's Missouri law. It is owed to the public as a whole. So official immunity bars the claim. Public duty doctrine bars the claim. And I don't think there's much dispute about those two facts. You're saying those are alternative. Yes, Your Honor. You don't need both, but you're saying both. We have factual disputes, Your Honor, with Officer Holzmeier, but for purposes of judgment on the pleadings, which is what my client received, I think that official immunity and public duty doctrine bar it, and then there's factual determinations if that were not to be the case that we have to get into on a summary judgment phase. But under the facts of this case, there may be a duty absent somebody being an official actor based on Bradley v. Wray, but that duty is barred by the official immunity doctrine and the public duty doctrine. And with that, I yield the balance of my 32 seconds, unless somebody else has a question. Thank you. Okay. Mr. Miller, you've got a minute and a half, hopefully. You know, I find it interesting that the Rush versus this, which has been cited, the Rush versus Senior Citizens Home District in Wray County can be so easily ignored, wherein the court said that whether a function is discretionary or ministerial is a case-by-case determination, and you review all evidence under the applicable standard. Now, I'm a little appalled around the edges that the state is taking the position, just because we can say that it has to be that we have this reasonable cause standard, that that creates no standard at all, that it's only in the officer's mind. An officer walks out here, sees somebody walking over by the stadium, that he goes, you know, darn it, I seen a guy wearing a yellow shirt the other day that stole something over here at Macy's. Lock, rock, and shoot him. Well, he had some reasonable cause to think that it may be the same person, same height, same weight. But can you shoot him? No. I mean, this is, we're not talking about arresting a person for jaywalking. And I want to talk about one of the facts here, because it did not get decided on the facts. This ostensible call to the child abuse hotline supposedly occurred and left on an answering machine. Guess what? They don't have one. So they don't want to get to the facts in this. They want it to go out on immunity, and it shouldn't. Thank you. Thank you all.